UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN FRISCHLING,<br><br>    *Plaintiff*,<br><br>    v.<br><br>DAVID RADFORD II, ALBERT GOSSELIN III, & TOWN OF MONTVILLE,<br><br>    *Defendants*. | No. 3:24cv198 (MPS) |

**RULING ON MOTION TO DISMISS**

This case arises out of the plaintiff's arrest and prosecution. Steven Frischling brings this action under 42 U.S.C. § 1983 against Montville police officer David Radford, Connecticut State Police Sergeant Albert Gosselin, and the Town of Montville. Gosselin has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the ground that he is entitled to qualified immunity. ECF No. 41. For the reasons that follow, the motion is granted.

**I.    FACTUAL BACKGROUND**

The following facts are drawn from the amended complaint, ECF No. 38, and are accepted as true for the purpose of this motion.[1]

Since 2019, Frischling has been the Public Information Officer ("PIO") for the Chesterfield Fire Company, a volunteer fire department in Montville, Connecticut. ECF No. 38 ¶ 7. The official duties and responsibilities of the PIO are set forth in writing by the Chesterfield Fire Company and include:

    -directing public relations activities for the Chesterfield Fire Company;

    -researching, writing, and designing communications such as press releases and external reports for the public and/or agency;

---

[1] I set forth only those factual allegations relevant to Frischling's claims against Gosselin.

-photographing and visually documenting incident scenes for release to the public, as well as for use in recruiting and training, provided that all images meet or exceed HIPAA guidelines for release and further dissemination;

-coordinating marketing efforts for department recruitment, community relations, and public education campaigns; and

-managing and creating content for the agency's social networking sites and department website.

*Id.* ¶ 13.

In December 2019, the Chesterfield Fire Company authorized and created a Chesterfield Fire Company Public Information Officer's Facebook page. *Id.* ¶ 15.

*The Facebook Post*

On February 7, 2021, Frischling responded to the scene of a motor vehicle accident in Montville. *Id.* ¶¶ 11-12. He wore a high-visibility jacket with the words "Chesterfield Fire Company P.I.O." across the back. *Id.* at ¶ 12. He also wore an identification badge issued by the Town of Montville that bore his name, his organization "Chesterfield Fire Company," and his title "Public Info Officer." *Id.* Frischling took four photographs of the accident scene. *Id.* ¶¶ 12, 14. Later that day, Frischling posted the four photographs on the Chesterfield PIO's Facebook page (the "Facebook Post"). *Id.* ¶ 15. Two photos were digitally altered - one to obscure a vehicle's license plate and another to obscure the head of a first responder present at the scene. *Id.* The photos were posted with the following statement:

> This morning, shortly after 9:15AM, as the snow began to fall over the region, your Chesterfield Fire Company and Oakdale Fire Department, along with a Montville Career Firefighter and East Lyme's Flanders Fire Department, operated on the scene of a two car motor vehicle accident, with entrapment, on Route 85 at Grassy Hill Road, Sunday, February 7, 2021, in Oakdale, Montville, CT.
>
> The motor vehicle accident resulted in Route 85 being closed to traffic for more than half an hour, and three patients being transported to the hospital by the Chesterfield Fire Company, Oakdale Fire Department and Flanders Fire Department, along with an L&M Hospital Paramedic.

> Your Montville Volunteer Fire Companies depend on you, our neighbors, to help protect our community. You are on this planet to make a difference, to do something. Leave a legacy. Join your local Montville Volunteer Fire Company.
>
> (Images may have a digital blur to obscure portions of a patient's identity and their license plate).

*Id.*

An unknown person brought the Facebook Post to Radford's attention. *Id.* ¶ 16. Radford "had an improper agenda and/or personally disliked Frischling" and commenced an "investigation [into the Facebook Post] on his own initiative and for no other purpose than to vex and trouble Frischling in furtherance of a personal vendetta." *Id.* ¶¶ 16-17.

Radford previously had expressed disdain for Frischling's activities as Chesterfield Fire Company PIO. *Id.* ¶ 18. In November 2020, Radford sent an e-mail to the Montville Public Safety Commission complaining about a November 6, 2020 Facebook post that Frischling as the Chesterfield Fire Company PIO made to the Chesterfield Fire Company PIO Facebook page. *Id.* The post depicted the Montville Police Department logo on a police patrol vehicle and a canine wearing a police hat. *Id.* The post stated:

> Join your Montville Police Department and Montville Youth Services this Saturday, November 7, 2020 and Sunday, November 8, 2020, and help them Fill-A-Cruiser, for Holiday Food Baskets!
>
> This Saturday and Sunday, from 9:00AM to 3:00PM your Montville Police Department and Montville Youth Services will be collecting food donations, outside Stop & Shop, located at 2020 Norwich-New London Tpke, in Uncasville, for Montville Social Services' annual holiday food baskets.
>
> Help support your community and help assist those who work to ensure no one goes hungry within your community.

*Id*.

Radford stated to the Montville Public Safety Commission that the post should be investigated for misrepresentation and retaliation against the Montville Animal Control Officer.

3

*Id.* ¶ 19. The Public Safety Commission did not act on Radford's suggestion, and one commissioner expressed his wish that Radford was present at the Public Safety Commission meeting to provide clarity for his complaint. *Id.*

*The Arrest Warrant*

Thereafter, Radford sought an opportunity to retaliate against Frischling. *Id.* ¶ 20. On March 8, 2021, after conducting what Radford later described as an "investigation" into the Facebook Post about the February 7, 2021 car accident, Radford applied for and obtained a warrant to arrest Frischling on two counts of violating Conn. Gen. Stat. § 53-341c. *Id.* Section 53-341c provides in pertinent part as follows:

> Any … firefighter, as [that term is] defined in section 53a-3, … who responds to a request to provide medical or other assistance to a person and, other than in the performance of his or her duties, knowingly (1) takes a photographic or digital image of such person without the consent of such person or a member of such person's immediate family; or (2) transmits, disseminates or otherwise makes available to a third person a photographic or digital image of such person without the consent of such person or a member of such person's immediate family, shall be fined not more than two thousand dollars or imprisoned not more than one year, or both.

*Id.* ¶ 21.

Radford knew that Frischling was the Chesterfield Fire Company PIO and that he "was performing and in the course of his duties on February 7, 2021." *Id.* ¶ 22. Yet Radford knowingly and intentionally, and/or with reckless disregard for the truth, made numerous false statements in the Warrant Application and/or omitted material information from the same, including the following:

> (a) Radford stated that the Facebook Post was brought to his attention on February 7, 2021 without further detailing who brought [it] to his attention to suggest that a civilian complaint was made in connection with the Facebook Post or that such a complaint originated outside of the Montville Police Department when, on information and belief, no such complaint was made and Radford instigated the investigation into the Facebook Post entirely on his own initiative;

4

(b) Radford omitted any reference to the fact that the Chesterfield Fire Company has, since inception in 1947, its own chain of command, positions, and billets for its members, and that it is the prescribing authority for all duties and responsibilities for all of its positions, including that of the PIO, to improperly and incorrectly suggest that the Chesterfield Fire Company either did not or could not prescribe the PIO's duties, including whether Frischling was performing his duties on February 7, 2021;

(c) Radford omitted any reference to the existence and substance of the Chesterfield Fire Company PIO's written duties and responsibilities, as duly enumerated by the Chesterfield Fire Company, and that such duties and responsibilities included taking photographs of incident scenes and releasing them to the public while adhering to HIPAA guidelines, including through social media such as Facebook, and he did so in order to conceal the existence and substance of such written duties and responsibilities from the state's attorney and/or the state court;

(d) Radford falsely characterized Frischling as one who merely identifies himself as the Chesterfield Fire Company PIO, as opposed to stating that Frischling was, in fact, the Chesterfield Fire Company PIO, to improperly suggest that the PIO position is neither authorized nor legitimate, or that Frischling was not, in fact, the Chesterfield Fire Company PIO;

(e) Radford omitted the four photographs from the Warrant Application and falsely characterized certain of the photographs in a manner suggesting that they were of "a person," as contemplated by Conn. Gen. Stat. § 53-341c, to whom medical or other assistance was being provided when they were not;

(f) Radford falsely stated that the photographs included occupants of vehicles at the Accident scene when they did not, and Radford knew such statement to be false at the time of its making;

(g) Radford falsely stated that one photograph depicted a victim still in the car when it does not, and Radford knew such statement to be false at the time of its making;

(h) Radford falsely stated that one photograph depicted an individual being strapped onto a stretcher when it does not, and Radford knew such statement to be false at the time of its making;

(i) Radford falsely stated that he had obtained a signed sworn statement from a witness related to one of the persons involved in the Accident when, in fact, he had not, and Radford knew such statement to be false at the time of its making;

(j) Radford omitted that, during his interview of Frischling on March 5, 2021, which Radford purports to describe in the Warrant Application, the Chief of the Chesterfield Fire Company, Keith Truex ("Chief Truex"), who was present with Frischling at the interview, stated that Frischling was acting in performance of his

duties when taking photographs at the Accident scene and posting the Facebook Post, and that such duties were written enumerated duties and responsibilities of the Chesterfield Fire Company PIO;

(k) Radford omitted that, after his interview of Frischling on March 5, 2021, Frischling e-mailed Radford calling attention to the plain language of Conn. Gen. Stat. § 53-341c stating "other than in the performance of his or her duties;"

(l) Radford falsely stated that Frischling was wearing a high visibility jacket at the scene of the Accident that read "Chesterfield Fire Company" across the back when, in fact, the jacket to which Radford refers, which was issued by the Chesterfield Fire Company, clearly read "Chesterfield Fire Company P.I.O." across the back as authorized by the Chief of the Chesterfield Fire Company, and Radford did so to improperly suggest that Frischling was not present at the scene as the Chesterfield Fire Company PIO;

(m) Radford omitted the video recording from a dash-cam video that he refers to in the Warrant Application because it would have depicted Frischling wearing a high visibility jacket with the words "Chesterfield Fire Company P.I.O." across the back;

(n) Radford omitted the Facebook Post and any reference to the fact that the post was made to the Chesterfield Fire Company PIO Facebook page, which was duly authorized and created by the Chesterfield Fire Company, to improperly suggest that the post was made to Frischling's personal Facebook page and/or was posted in a manner inconsistent with Frischling's duties as Chesterfield Fire Company PIO; and/or

(o) Radford omitted that the Town of Montville had paid for and issued to Frischling turn-out gear bearing the words "Chesterfield" and "P.I.O." to improperly suggest that PIO was an informal and/or unauthorized position and that Frischling, therefore, could not have been engaged in the performance of any [such] duties on February 7, 2021.

*Id.* ¶ 22. Radford signed the warrant application as the "affiant." ECF No. 33-2 at 4. [2]

---

[2] The warrant, ECF No. 33-2, was submitted with Gosselin's initial motion to dismiss, ECF No. 33, which he incorporated in this motion. ECF No. 41 at 1. Frischling does not object to the Court's consideration of the warrant. ECF No. 48 at 3 n. 4. "Generally, in determining whether a complaint states a claim, the court is required to make the assessment based solely on the allegations in the complaint, without considering extraneous facts and materials." *Pearson v. Gesner*, No. 22-1227, 2025 WL 77229, at *5 (2d Cir. Jan. 13, 2025). "[E]xtraneous materials do not become integral parts of the complaint unless the plaintiff relied on them in drafting the complaint." *Id.* Here, Frischling relied on the warrant in drafting the complaint and therefore the warrant is integral to the complaint. *See Mortimer v. City of New York*, No. 15 CIV. 7186, 2018 WL 1605982, at *10 (S.D.N.Y. Mar. 29, 2018) (in case alleging false arrest, the court held that the complaint "relies heavily on the terms and effect of the arrest warrant, and it is thus integral to Plaintiffs' claims").

The "false statements, mischaracterizations, distortions, and calculated omissions" were critical to a finding of probable cause in that they misled and induced the state's attorney and/or the state court to believe:

> (a) that Radford had not instigated his so-called "investigation" or otherwise applied for an arrest warrant out of disdain for, and/or for the purpose of harassing and denigrating, Frischling;
>
> (b) that there was probable cause that Frischling was *not* acting "in the performance of his . . . duties" as stated in Conn. Gen. Stat. § 53-341c at the Accident scene and in connection with the Facebook Post;
>
> (c) that there was probable cause that the photographs were of a "person" for whom medical or other assistance was requested as stated in Conn. Gen. Stat. § 53-341c; and
>
> (d) that there was probable cause as to a lack of consent to photograph and/or to disseminate any photograph from a "person" involved in the accident and/or such person's immediate family members as stated in Conn. Gen. Stat. § 53-341c.

*Id.* ¶ 23.

*Gosselin*

Gosselin was a sergeant in the Connecticut State Police and the Resident State Trooper for the Town of Montville. ECF No. 38 ¶ 9. He signed the "jurat"[3] on the warrant application in the field that said "Judge/Clerk, Commissioner of Superior Court, Notary Public." ECF No. 33-2 at 4. He "knew or should have known that the [] statements in the Warrant Application were false, misleading, or both, and he knew or should have known of Radford's various omissions of material fact, yet he approved and signed the Warrant Application." ECF No. 38 ¶ 24. Gosselin had several prior interactions with Frischling in his capacity as Chesterfield Fire Company PIO and knew,

---

[3] "'Jurat' means a notarial act in which a notary public certifies that a signatory, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made, in the notary public's presence, a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed document." Conn. Gen. Stat. § 3–94a(3). In this situation, Radford wrote the contents of the arrest affidavit in question and swore to Gosselin that the statements were true.

7

among other things, that Frischling was the Chesterfield Fire Company PIO. *Id.* When Gosselin signed the jurat, he knew that (i) Frischling was acting in performance of his duties on February 7, 2021 with respect to the Accident scene photographs and the Facebook Post; and (ii) in November 2020, another Montville fire department had posted photographs to its Facebook page depicting firefighters responding to a request to provide assistance to two persons, both of whom are depicted in the photographs, but no criminal investigation or prosecution was commenced. *Id.* ¶ 36(c).

On March 9, 2021, "on the basis of Radford's false statements, mischaracterizations, distortions, and calculated omissions in the Warrant Application," a Connecticut Superior Court judge issued a warrant for Frischling's arrest on two counts of violating Conn. Gen. Stat. § 53-341c. *Id.* ¶ 25. He was arrested later that day. *Id.* On March 23, 2023, the state court dismissed the charges. *Id.* ¶ 33.

## II. LEGAL STANDARD

### *Rule 12 (b)(6)*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a motion to dismiss, the court must accept as true all of the complaint's factual allegations, *id.*, and "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

### *Qualified Immunity*

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega,* 371 F.3d 110, 114 (2d Cir. 2004). Although precedent need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). When determining whether a right was clearly established, a court must define the right in question in a "particularized ... sense." *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004). *See Torcivia v. Suffolk Cnty., New York,* 17 F.4th 342, 367 (2d Cir. 2021) ("we look to the specific context of the case at bar rather than broad general proposition[s].") (internal quotation marks and citation omitted). "Whether a right was clearly established is a question of law." *Brush v. Old Navy LLC,* 687 F. Supp. 3d 452, 488 (D. Vt. 2023).

"Qualified immunity is an *immunity from suit* rather than a mere defense to liability. Accordingly, we have long recognized that unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal *before the commencement of discovery."* *Steele-Warrick v. Finnegan*, No. 23-743, 2024

WL 2837618, at *1 (2d Cir. June 5, 2024) (internal quotation marks, footnotes, and citations omitted). "Although courts should resolve the question of qualified immunity at the earliest possible stage in litigation…, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (internal quotation marks and citations omitted). Specifically, at the motion to dismiss stage, the plaintiff is "entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). "At the motion to dismiss stage of a civil damages action, a defendant is entitled to the shield of qualified immunity if the allegations of the complaint fail to state a claim that his conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Charles W. v. Maul*, 214 F.3d 350, 356-57 (2d Cir. 2000) (internal quotation marks and citation omitted). Here, the defense of qualified immunity can be resolved as a question of law with no need for further factual development.

### III. DISCUSSION

In count one, Frischling alleges that Gosselin violated his Fourth Amendment right to be free from arrest without probable cause. Specifically, the complaint alleges that "upon reviewing the Warrant Application, Gosselin knew or should have known about Radford's false statements, mischaracterizations, and omissions therein, yet he recklessly disregarded the same in approving and signing the Warrant Application" and he "thus had reason to know that Frischling's false arrest was likely to occur." ECF No. 38, Count 1 ¶¶ 36(c), (d).

Gosselin moves to dismiss on the ground that he is entitled to qualified immunity.[4] He asserts that "it is not clearly established that a supervisory officer is personally involved in a claim for false arrest where that officer is neither the affiant on the warrant at issue nor the officer that presented the warrant to court, but instead merely signed the warrant as a witness." ECF No. 41 at 1.

First, I address some confusion arising from the manner in which the parties discuss the issue in their briefs. Both parties use the term "personal involvement" in connection with this motion.[5] ECF Nos. 41-1 at 3, 48 at 5. They each also cite *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), which clarified the standard for imposing liability on a supervisory official.[6] But I find that the parties' use of the term "personal involvement," coupled with their citation of *Tangreti*, only muddies the waters here, and is not helpful to the analysis. Second Circuit cases addressing "personal involvement" have generally concerned whether a supervisory official's actions are enough to make that official liable for a constitutional violation that stemmed from the conduct of an underling. *See Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). But that is not the issue here. Although the parties refer to "supervisory liability" in their papers, see ECF No. 41-1 at 1, ECF No. 48 at 6, ECF No. 50 at 1, neither the allegations nor the warrant application suggests that Gosselin was acting as Radford's supervisor. In fact, according to the complaint, Radford and Gosselin worked for distinct law enforcement agencies, and Radford had a higher rank. Compare

---

[4] Frischling argues that in his motion, Gosselin addresses only count 1, the Fourth Amendment false arrest claim, and not the other claims asserted against him – a failure to intervene claim alleging that Gosselin had a duty to prevent Radford from violating Frischling's Fourth Amendment rights (count 2) and a false arrest claim under state law (count 4). ECF No. 48 at 1. I agree. In his reply brief, Gosselin argues that he addressed count 4 in his earlier motion, ECF No. 50 at 4, but the reference was in a footnote in which he asserted, without analysis, that the court should decline to exercise supplemental jurisdiction. ECF No. 33-1 at 1 n.1. This argument was not mentioned again in his subsequent moving brief. As for the failure-to-intervene claim, Gosselin's brief does not provide any analysis of that claim.
[5] Gosselin's original motion to dismiss also framed the issue this way. ECF No. 33-1 at 1.
[6] Under *Tangreti,* "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 983 F.3d at 618 (quotation marks and citation omitted).

11

ECF No. 38 ¶ 8 (alleging that Radford was a *Lieutenant* in the Montville Police Department) with ECF No. 38 ¶ 9 (alleging that Gosselin was a *Sergeant* in the Connecticut State Police and served as resident trooper for the Town of Montville).

The correct analysis here focuses on Gosselin's conduct and, specifically, whether that conduct violated the Fourth Amendment right to be free from arrest without probable cause under clearly established law. I accept these factual allegations about Gosselin's conduct as true for the purposes of this ruling: Gosselin knew (1) that Frischling was the Chesterfield P.I.O. and that Frischling was "acting in performance of his duties" as such on February 7, 2021, and (2) that the Warrant Application omitted and mischaracterized facts material to a finding of probable cause, that is, that Frischling was "acting in performance of his duties" as Chesterfield P.I.O. on February 7, 2021; but despite this knowledge, Gosselin signed the "jurat" on the warrant, i.e., he witnessed Radford sign the document as the affiant. *See* note 3, *supra*.

To be sure, the complaint also alleges that Gosselin "approved" the warrant application, see ECF No. 38 ¶ 36(c), but the complaint offers no facts to support this conclusory statement, and so I need not accept it as true. *See Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (noting that a court is not "required to accept as true allegations that are wholly conclusory"). Further, this conclusory allegation is contradicted by the warrant application, which makes clear that Gosselin simply signed the warrant as a witness to Radford's signing as the affiant. See ECF No. 33-2; see note 3, *supra*. The warrant application includes no indication that Gosselin "approved" the application; rather, all it shows is that he signed it as a notary.[7] Further, as noted, there are no

---

[7] Under Connecticut state law, a notary's role is to perform acts such as "taking an acknowledgement, administering an oath or affirmation, witnessing or attesting a signature and completing a copy certification." Conn. Gen. Stat. § 3-94a(4). See also note 3, *supra*.

12

factual allegations suggesting that Gosselin was Radford's supervisor or otherwise in a position to "approve" the application.

So, for purposes of clarity, I will not refer to "personal involvement" in the discussion below but, rather, to the critical issue raised by Gosselin's motion, namely, whether his alleged actions violated the Constitution under clearly established law. More specifically, the question here is whether - in signing the warrant as a notary - Gosselin violated the clearly established law of false arrest, in light of his alleged knowledge that the warrant contained "false statements, mischaracterizations, distortions, and calculated omissions … critical to a finding of probable cause." ECF No. 38 ¶ 33. For the reasons below, I conclude that he did not.

In support of his argument that Gosselin's alleged conduct is sufficient to make an officer liable for false arrest, Frischling points to *Legree v. City of Waterbury,* No. 3:22CV659(JCH), 2024 WL 3964944 (D. Conn. Aug. 28, 2024). The court in *Legree* observed that liability for an arrest is not limited to officers who were physically involved in taking someone into custody. *Id.* at * 7. In *Legree*, one of the defendants "gave the order that led to the plaintiffs' arrests," conduct the court found "sufficient to base a finding that he caused the plaintiffs to be arrested." *Id.* at *8. Another defendant, Officer Terni, "was present at the scene of the arrests and oversaw the actions of members of the Field Force Unit" and "completed the paperwork for the plaintiffs' arrests." *Id.* On the arrest paperwork, he listed himself as the "Investigating Officer" and signed in the field marked "Investigator Signature." *Id.* The court found that these circumstances supported the inference that he played an active role in the arrests. *Id.* at *9.

The *Legree* court noted that other district courts have held that completing arrest paperwork is enough to make an officer liable even if the officer is not present at the scene. *Id.* at *7 (citing cases). In *Shaheed v. City of New York*, 287 F. Supp. 3d 438 (S.D.N.Y. 2018), the court found that

13

where an officer completed arrest paperwork based on her "observations of the scene," that conduct was enough for a defendant officer to be liable even though she did not "physically effect either plaintiff's arrest." *Id.* at 449 n. 6.  Similarly, in *Marom v. City of New York*, 2016 WL 916424, (S.D.N.Y. Mar. 7, 2016), the court found that officers "directly participated" in the plaintiffs' false arrest by completing arrest paperwork that included "false statements" about what the officers allegedly saw.  *Id.* at *16.

But unlike *Legree* and the cases cited therein, Gosselin was not the affiant nor did he provide any information that was material to the finding of probable cause.  He did not initiate or command Frischling's arrest.  Rather, Gosselin signed the jurat after Radford swore to him that the statements therein were true when Gosselin allegedly knew that there were material misstatements and omissions in the warrant.  None of these cases (all of which are just district court cases) demonstrate that Gosselin's mere signing of the "jurat" on the warrant application (see note 3, *supra*) with knowledge of false statement or misleading omissions in the document is enough under clearly established law to make him liable for false arrest in violation of the Fourth Amendment.  Frischling has not identified, nor has the Court's research revealed, any authority that clearly establishes that Gosselin's actions could make him liable for violating Frischling's Fourth Amendment's right to be free from false arrest.  Because no caselaw clearly establishes that Gosselin's conduct violated Frischling's constitutional rights, the motion to dismiss the false arrest claim on the ground of qualified immunity is granted.

## IV.    CONCLUSION

For these reasons, the motion to dismiss count one as to Gosselin (ECF No. 41) is GRANTED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       March 7, 2025